Gentleman, LLC v. George and Leona Productions, let's see, Mary Gentleman. There should be a couple of giggles that go with it. Mr. Tanner. Good morning Judge Rovner and your honors. Good morning. May it please the court, counsel. The court below found that a plaintiff in a breach of contract case who's trying to prove up reliance damages needs to demonstrate a causal link between the defendant's breaches and the claimed monetary losses. That's the court's holding and that's in my appendix at page 14. We believe that's incorrect and requires a reversal of the judgment below. Just as a matter of logic, why should a party be able to recover reliance damages unless it can show that it was in fact injured by the breach of contract? I mean showing that you spent money in performing the contract doesn't by itself establish that the breach caused an injury, does it? It does not and in fact I think the very reason for the existence of the reliance concept is that there are some cases in which it will be difficult or impossible to show essentially the but-for damages that we expect in the benefit of the bargain analysis that we're accustomed to seeing most of the time in contract cases. But it seems to me that it's fairly common for breaches like the one that's alleged, in this case to occur in the context of contractual relationships, particularly ones that involve creative services. Delays in production, for example, artistic differences about the final form of the project wouldn't permitting an award of reliance damages for a breach irrespective of any proven injury cast a cloud on these relationships? I mean do you think there's no such thing as a harmless breach? I have no doubt that there are harmless breaches and under this framework that's been incorporated into Illinois law through adoption of the restatement section 349, I'm not standing here before you saying I know that we get to get every penny we spent on this picture. That's never been our position. Our position is that under the reliance damage that's in section 349 that's incorporated in Illinois law, I get to come forward with that initial burden and the burden then shifts to the defendant. But in the end didn't Murray Gentleman get everything it bargained for? The film was selected for Sundance, arguably the most prestigious film festival in this country, and it received critical acclaim. Mr. Keaton was at Sundance, did every interview it would seem, I mean it really represents the pinnacle of independent filmmaking, even if a film wasn't commercially successful. Most films that I love are not commercially successful. Judge, Murray Gentleman LLC did not get everything that it bargained for. Okay, you help me then. It bargained for the opportunity to submit the film of its choosing to Sundance and we didn't get too lost in the weeds in the court below about the contractual provisions, but Mr. Keaton was allowed to have a first director's cut and from that point forward the creative decision making, the control over the promotion of the film, they belonged to Murray Gentleman LLC. Mr. Keaton took that away. He went behind the producer's back to the director of Sundance. The breaches are conceded here for purposes of this appeal. I agree, Your Honor, yes. Can I ask you a few questions if I could about this restatement section 349? Please. Which you rely upon so heavily. The comment to that provision says that recovery for expenditures under the rules stated in this section may not exceed the full contract price. The full contract price here looks like $100,000 for the discovery, for the director contract, right? Yes. I think, I forget if it's within that same comment or in the case law that construes that comment, and this probably wouldn't be from Illinois because we kind of go all over the country to find these, but that is to prevent someone from being awarded something for a contract that was going to be a sure loser. You can't get more than, I'm sorry, I lost myself mid-thought there. The language is recovery for expenditures under the rules stated in this section may not exceed the full contract price. You're asking here for $5.5 million. The full contract price is $100,000, correct? The director's contract was $100,000, Your Honor. That's the contract you're saying was breached. You're correct, it is. So why are we having this discussion if your damages are limited to $100,000? I wish I was better prepared for Your Honor's question. Clearly this was never raised below. You're the one relying on section 349. Yes, I am, Your Honor. I know that in the case law discussing this, it's to keep somebody from recovering for a contract that was certain to be a loser anyway. But also prevent, it's also the response to the danger that, in essence, minor contributors to a larger product become guarantors of its success. And I don't think that could be the case, and let me explain why. The example that's been tossed around is the caterer. The caterer shows up late for lunch, do I get to recover the entire, do I get to even seek to recover the entire cost of a motion picture because the caterer showed up for lunch, showed up late for lunch? Absolutely not. And the reason is no one, no one in their right mind is ever going to be able to say, yeah, I spent $5 million because I expected, you know, Blue Plate to show up with lunch at noon and they didn't come until 2. It's kind of ridiculous on its face. A director of a motion picture is a, you know, to call them central barely begins to cover it. They are a key member of the entire thing. Your disregard of that provision in 349 would open up this danger of guarantors, right, of becoming an insurer of the success if there are the kinds of artistic differences that present tribal issues of fact about breach of contract, right? If there's a tribal issue of fact with regard to whether the reliance factor is there. With respect to the breach. You know, I'm thinking of the Wartsman case that we cited out of Maryland, and that was a case where the law firm that put together the corporation wound up, a corporation that essentially failed in its essential mission because of malpractice by the lawyers or breach of contract by the lawyers. And, you know, they raised the same argument. They said, why should we be the guarantor? I don't remember what the dollar amount was, but pretty clearly the amount that was spent on the lawyers was a fraction of what the promoters of the organization had spent. And the Maryland Special Court of Appeals had no difficulty saying, no, you're not the, you know, this doesn't make you the guarantor. So did they disregard this cap on damages? I don't believe that it is a cap on damages, Your Honor. It's a comment, and I'm not aware of any court that's held that it is a cap on damages. It may be a comment, but it's extremely clear and strong in its language. You're the one telling us Illinois is adopting Section 349. Well, let me also, if I could, ask you about a couple of questions. You, in essence, built your entire causation claim on two paragraphs of your statement of facts, 121 and 122, correct? If it wasn't. Those are the ones you cited to say we've got, we've done enough to show. I think this was with regard to the issue that we didn't get to screen the film that we were entitled to screen. With respect to the issue of whether you've come forward with enough to shift the burden of proof to the defense to show an absence of damages, you say that you spent over $5 million to produce the film, the vast majority of which was spent after Keaton entered into his directorial contract. Correct. You say nothing about how much was spent after Keaton breached. Probably not in that motion, Your Honor, but again, in response to the motion, but this isn't trial. Presumably some was spent before and some was spent after, right? Well, these breaches were all after filming and after editing, correct? No, sir. Promotional and then the director's cut business and the screening itself. I'm sorry, Your Honor. That was editing. That was the editing portion was the, you know, Mr. Keaton putting together his cut, Mr. Keaton putting together his cut within... So it was a little late. It's not unheard of in the movie industry, I'm sure. It's probably not unheard of and it was actually quite late, but then going to Sundance, I think we alleged in the complaint that by the time we went to Sundance, we had spent like $4.1 million on the film. Yeah. Sure, you spent a lot of money on the film already, but it's not as though his performance was valueless, was it? No, but he... He directed the shooting. He did the edit. He produced a version that won at least acclaim at Sundance, right? Ultimately, yes. Yeah, so, okay. You've used up all your time. I'll give you a minute for rebuttal, though. I appreciate that, Your Honor. Sure. Thank you. Okay, Mr. Kump. Thank you, Your Honor. May it please the Court, my name is Michael Kump and I'm here on behalf of the defendant and appellees. Mary Gentleman is wrong about Illinois law. Every Illinois case that has been cited clearly states that a plaintiff who seeks to recover for breach of contract damages must establish four elements. The fourth element, which is well known to everyone who has gone to law school, is that the plaintiff's loss must have been caused by the defendant's breach. And Mary Gentleman doesn't cite any Illinois case where there's an exception to that time-honored rule. So what Mary Gentleman wants to do here is it wants to change Illinois law in a very fundamental sort of way. Under the guise of what it calls reliance damages, it wants to recover back all of the money it spent in making the movie and it wants to keep the benefits of the contract. In a word, it wants to get a Hollywood movie for free. Mary Gentleman hasn't cited a single Illinois case in which this fact pattern has been adopted. Well, their position is it seems to be considerably more subtle than that, which is that whether they've made enough of a preliminary showing or not, this is the kind of context in which the law seems pretty well established that the burden at some point shifts to the breaching party to defeat causation. In essence, the uncertainties that we might deal with are shifted to the party in breach, and for better or worse, you all decided to, in essence, concede breach for purposes of this motion and this appeal. So we've got to treat you as the guys with the hands who are dirty, and clearly, I mean, it seems to be reasonable to say, well, we spent all this money with the expectation that our director would comply with his contract. In opposition to summary judgment, Your Honor, Mary Gentleman said that they had been damaged in two specific ways, and this was stated in a single sentence in a seven-page opposition. They said we weren't able to make the movie of our choice, and we incurred additional expenses. And the district court correctly ruled that those two assertions were not supported by any evidence in the record. They were not supported by the citation to the party's local Rule 56.1 statement of material facts, and therefore the district court properly disregarded those claims. In addition, those arguments were not even developed. I think the court used the expression in one drive-by sentence. They threw this out in a seven-page opposition. There was no explanation of what the additional costs were. There was no explanation of how anything Mr. Keaton did or did not do interfered with their right to make the movie of their choice. And so what we have here is we have the plaintiffs who are trying to, again, keep the movie and yet at the same time get back all of the money they paid for it. If you look at the Illinois cases that have allowed reliance damages, and the best case which is cited by the plaintiff is the Herbert Yeager case. That's a case in which a company wanted to, a charitable association I should say, wanted to build a building. They went out and hired a contractor to do it. Well, the contractor walked off the job and left the plaintiff holding the bag. In that case, what was key and what has been the case in all of these cases with reliance damages is you have the defendant repudiating the contract, either not performing at all or barely starting performance. And it's in those circumstances that the courts have held expectation damages are speculative. But the courts are not holding that causation is speculative. They're only saying the measure of damages is speculative. It's undisputed here that there was no repudiation, not anything even approaching it. As the court noted in response to counsel, it's undisputed. Virtually all of the material facts we put in summary judgment were undisputed by the plaintiff. It's undisputed that Mr. Keaton directed the movie, delivered the movie. It got into the most prestigious film festival in the world. It got critical praise. And then they were able to go out and sell it. Did it become a cult movie? I would hope so, Your Honor. Is that left to the ages? Yes, yes. I'm not even sure what a cult movie is. Well, the cult movie is one that people recognize over time as having great artistic value. People who belong to the cult? With the subject matter of this movie, that's possible. But I think what Mary Gentleman is seeking, the purpose of reliance damages, is to reimburse a party for losses that it supposedly was subjected to and put them back in the same position they would have been in as if no contract had been entered into. Mary Gentleman is not seeking reliance damages. It's not even seeking damages. Because what Illinois law teaches us is that the role and the purpose of contract damage is to reimburse somebody for a loss. What they want here is to be put in a better position than if there had been no contract at all. And Illinois law is clear that that type of windfall is not appropriate. The dispute here, as I understand it, is really about the burden of proof with respect to measuring damages. And I guess it would be helpful to me, Mr. Kemp, if we could imagine a somewhat more extreme case of a director torpedoing a movie. Let's say the fallout leads to the producer's cut going to the film festival and the director publicly trashes it so that nobody will pick it up. And the producers want all their money back from the director. What's the response? What's an appropriate measure of damages? As I read these cases, that would probably be enough to shift the burden to you to come forward and say, no, there are other causes for the loss than the fact that my client trashed the movie. But I would have expected also an argument to the effect that your damages are limited to $100,000. Well, there's two responses. One is that I think that there is a role for reliance damages to play in this. For example, if the director did not show up to perform or if the director walked off the set after a week or two weeks of performance, then I can clearly see that happening. But when the director produces a movie, delivers a movie, and then there is some subsequent dispute about that, even if it takes place in the press, I think given the type of... One of the things Mary Gentleman says in the reply brief that I agree with, is they say making movies is inherently uncertain. And they're trying to shift all of that burden and all of that risk to Mr. Keaton, for which there is no justification. Well, okay, your hypothetical is that if there's repudiation, then reliance damages are okay. Yes. And clearly that's right, but I don't know that we have... that you have to be limited to repudiation cases. Excuse me. So imagine the case that I've described where there's the later trashing. I think if you took the undisputed facts in this case and you grafted that fact onto it, there would still not be sufficient grounds for finding an issue of material fact with respect to causation and damages. Why not? Because I don't think that it goes to the issue. Their claim is that they lost their entire investment. And Mr. Tanner said, well, we aren't seeking the five and a half. Well, let's say we lost something. And it's up to you to prove how much we would have lost anyway. That was not what I do with respect. I don't think that's what they said in their seven-page opposition in the district court level. That's probably right. This is an argument that, by the way, has really been developed here for the first time on appeal. If you look at their seven-page opposition filed in the district court, Section 349 is cited in one string cite. And if you look at 349, Section 349 of the restatement does not suggest that the burden of proof on causation should be shifted to the other party. There is not a single citation to any case or any statute that has been made that would suggest such a radical change in the law. Can you imagine what would happen if all of a sudden the defendant had the burden of disproving causation? Nobody could ever get summary judgment on a breach of contract case. Nobody is saying that. You're exaggerating the position. But it does use the language, less any loss that the party in breach can prove with reasonable certainty. The injured party would have suffered had the contract been performed. Correct? Well, the full language of the statute, first of all, talks, yes. It does shift the burden of proof at some point. I'm trying to get more specific guidance from you, since one of us is going to have to write something about this with respect to how much is enough to shift the burden of proof. It does shift at some point. The burden of proof shifts in the following sense. Under Illinois law, the plaintiff is required to establish the four elements. Once the four elements are established, then the plaintiff is obligated to show that damages are foreseeable and that damages can be proven with reasonable certainty. If the plaintiff surmounts all of those hurdles, then the defendant, like in any case, has the opportunity to assert affirmative defenses. And one of the affirmative defenses that a party could assert in that situation, after the plaintiff has met all of those burdens, is to argue that the loss would have been suffered had the contract been performed. But if you look at the language of 349, it says as an alternative to the measure of damages. It's not talking about causation. It's talking about what happens after causation is established. And it firmly says that the first burden is on the plaintiff to prove what their expenditures were in reliance on the promise and to prove that that was lost as a result of the defendant not keeping its promise. Once that is met, then yes, the burden shifts. And by the way, the burden shifting is not language that's used in this statute. And I think the only place that anyone had talked about the burden shifting was in one of the out-of-state cases that they cited for the first time on appeal. But I think that that's loose language. I don't think that somebody... You're saying the language in the restatement is loose? No, no, no, not at all. The language in the restatement is clear. But there were a couple of cases that, because of the procedural context of the cases, talked about the burden shifting to the defendant. And what that means is after the plaintiff has met all these requirements, has proved causation, et cetera, then the burden shifts in the sense of the defendant has the opportunity to prove that there were not such damages. I realize that I'm out of time, and so for all of the reasons set forth... You just want to sit down. For all of the reasons set forth in our papers, Your Honors, we would respectfully request that the district court's grant of summary judgment be affirmed in its entirety. Thank you very much. You can sit down. Thank you. Two minutes. Thank you, Judge Roedner. Your Honors, there is burden shifting. You really can't look at language that says that the party in breach has an opportunity to prove with reasonable certainty something without suggesting that there's a burden on that party. And, Judge Hamilton, what I think you were getting at is that there is at least some subtle difference between the traditional causation and a benefit of the bargain matter and a reliance matter. Now, I've heard about my eight-page brief below. We clearly set out two different theories of recovery, one reliance and as the alternative benefit of the bargain, which frankly is, let's face it, that's just going to be impossible to make out in a case like this. They filed a summary judgment motion, and I will grant you a defendant who's moving for summary judgment has a pretty minimal standard. You can say you've got to prove X and you can't prove X. That's enough to set the challenge up for me. They never discussed what X was with regard to reliance damages. They spoke only, only, only of traditional benefit of the bargain cases. They didn't cite a single reliance case, and they waited until the reply brief to do it, and now trying to hold my side responsible for what was clearly not the best presentation of the issues. But I think the failure to present those issues was because of the way that they briefed the case. The talk about my client wanting all the money back and everything and all the money back, there was simply no support in the record for that. I think I've got a burden to show what I spent. My client has a burden to show what it spent in reliance on the contract, and that satisfies a burden, and then we're going forward. We have not been to trial. If I'm limited to $100,000, then I'm limited to $100,000, and forgive me for not being better ready to address that question today, but I think I know a way around it, but I just can't remember what it is. I ran across it in my research. But this was summary judgment. They had an obligation to say, Plaintiff, you've got to show X. They didn't do it. They ignored it. They ignored it altogether in their motion. We raised this with the district judge in the brief hearing that we had before it was decided. Repudiation is not a prerequisite to this. There's the Wardsman case, there's the world of boxing case. It comes up in many cases where there has not been repudiation and where clearly the burden gets shifted to the defendant, to the party in breach to demonstrate why this money wouldn't have been lost had the party performed. In terms of torpedoing a project, Judge Hamilton, that you mentioned, it did not come up in the context of summary judgment because, as you noted, the fact of breach was really not contested for summary judgment purposes. But if you look at the complaint, we actually do allege that Mr. Keaton went out, at my client's expense, to go on talk shows to tell people that he couldn't remember what the plot of the film was, and then to put on a pair of sunglasses and look the other way when they were showing the clip of the film, which Robin Roberts saw fit to comment on when the lights went back up in the studio. So we have significant breaches of exactly that sort. I think we met our burden to go forward and to get to trial, and I think for the district court to hold that the plaintiff's burden in a reliance case is essentially the identical burden to the burden that you'd have in a benefit of the bargain case is wrong, which is exactly why the Illinois cases say reliance damages are particularly useful where it would not be possible to demonstrate benefit of the bargain damages. I appreciate your time, and I ask that you reverse the court vote. Thank you very much. Thanks to both counsel. Case will be taken under advisement. This court is in recess. All of you go have lunch.